IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL ACTION NO.: 3:18-312-MGL |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| COREY DESHAWN TAYLOR | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

Defendant Corey Deshawn Taylor has filed a pro se motion pursuant to 28 U.S.C. § 2255 asking this Court to vacate his conviction and sentence based on general allegations that his counsel was constitutionally ineffective. Taylor's counsel, however, successfully negotiated a plea bargain that allowed Taylor to plead guilty to the lesser-included offense of Count 1 and resulted in the dismissal of another count which carried a five-year consecutive sentence. Taylor's counsel further negotiated an agreement whereby the Government agreed not to pursue a two-level sentencing enhancement as recommended by the Probation Office in Taylor's PSR as well as the successful disposition of Taylor's pending state charges. At bottom, Taylor is unable to demonstrate that his counsel's performance and strategy were objectively unreasonable or that he was prejudiced by her performance. Accordingly, and for the reasons set forth more fully below, the Government respectfully moves the Court to enter judgment in favor of the Government.

**Factual Background**

On March 20, 2018, a federal grand jury returned an indictment against Taylor charging him with conspiring to distribute 5 kilograms or more of cocaine and possessing a firearm in furtherance of a drug trafficking crime. The indictment followed an investigation by the Drug Enforcement Administration (DEA) and the Richland County Sheriff's Department (RCSD).

(Taylor PSR ¶ 11.)  In January 2016, Taylor was arrested by the RCSD deputies following the execution of a search warrant at Taylor's residence.  (Taylor PSR ¶ 12.)  Deputies seized over fifteen pounds of marijuana, United States currency, and two loaded handguns.  (Taylor PSR ¶ 12.) Taylor was charged with Manufacture, Possession, of Other Substance in Schedule I, II, or III and Possession of a pistol During a Violent Crime.  (Taylor PSR ¶ 14.)  He pled guilty to the South Carolina drug offense in December 2017.  (Taylor PSR ¶ 44.)

Between July 2016 and December 2017, several cooperating sources identified Taylor as a significant supplier of cocaine.  (Taylor PSR ¶¶ 16-21.)  On January 18, 2018, RCSD investigators executed search warrants at multiple residences associated with Taylor and seized multiple firearms and over a kilogram of cocaine.  (Taylor PSR ¶¶ 23-26.)  During a post-*Miranda* interview with DEA agents present for the search, Taylor admitted to his role as a significant supplier of cocaine and marijuana.  (Taylor PSR ¶ 28.)  A federal grand jury indicted Taylor in March 2018. On September 29, 2020, after extensive negotiations among counsel, Taylor pled guilty to the lesser included offense of Count 1.  (ECF No. 80.)  Pursuant to the terms of the plea agreement, the Government also agreed to dismiss the count charging Taylor with possessing a firearm in furtherance of a drug trafficking offense, which carried a five-year consecutive sentence to the conspiracy charge.  (ECF No. 79.)

Prior to Taylor's sentencing hearing, the United States Probation Office prepared a PSR. The PSR held Taylor accountable for over 1000 kilograms of converted drug weight.  (Taylor PSR ¶ 56.)  It also assigned a two-level enhancement for possessing a firearm in connection with drug trafficking and another two-level enhancement for maintaining a premises for the purpose of drug distribution.  (Taylor PSR ¶¶ 57-58.)  The probation officer recommended a total offense level of 31, and assigned Taylor to a criminal history category of IV, which yielded an advisory guidelines range of 151 to 188 months' incarceration.  Taylor's attorney submitted an objection to the two-level enhancement for Taylor maintaining a premises for the purpose of drug trafficking.  After extensive negotiations with Taylor's counsel, the Government agreed not to pursue the two-level

stash-house enhancement, and the Court sentenced Taylor to 130 months' incarceration. (ECF No. 92.)

Taylor did not file a direct appeal. On December 6, 2021, Taylor submitted a pro se motion to vacate his sentence under 28 U.S.C. § 2255. In his § 2255 motion, Taylor claims that his attorney was constitutionally ineffective for failing to inform him of the consequences of pleading guilty, failing to pursue a suppression motion, failing to conduct an adequate investigation, failing to review his PSR with him, failing to properly argue objections to the PSR, and failure to consult with him about filing a notice of appeal. (ECF No. 100.)

For the reasons given below, Taylor's claims fail, and the Court should enter judgment in favor of the Government.

## Legal Framework

To sustain a claim of ineffective assistance of counsel, Taylor must satisfy the standards of the two-pronged test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The standard for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process to have produced an unreliable result. *Id.* at 685. The movant must show that his counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-91.

Counsel's conduct must be judged based on the facts of the case, viewed at the time of counsel's conduct. *Id.* at 690. In addition, a court must apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. *Darden v. Wainwright*, 477 U.S. 168, 169 (1986). "While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel." *Brannon v. Stevenson*, No. 9:13-cv-1792-RMG, 2014

WL 4954884, at *28 (D.S.C. Sept. 29, 2014) (citing *Strickland*, 466 U.S. at 689). Accordingly, counsel's performance must be evaluated in light of the circumstances of the representation. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (the "reasonableness of a lawyer's trial performance must be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential.") (quotation marks and citations omitted). "Perfection is not required," and the test is not "whether the best criminal defense attorneys might have done more" but merely whether the attorney's actions fell "within the wide range of reasonable professional assistance." *Id*. (citations and internal quotation marks omitted).

In order to establish prejudice under *Strickland*'s second prong, Taylor must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*. (quoting *Strickland*, 466 U.S. at 696). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more probable than not standard is slight and matters 'only in the rarest case.'" *Id*. (quoting *Strickland*, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id*.

## Arguments

Taylor's first three arguments generally claim that his Sixth Amendment right to effective assistance of counsel was denied because of defense counsel's performance prior to his guilty plea. In the context of a guilty plea, the Court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining whether a guilty plea is

constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket v. Angelone*, 208 F.3d 172, 189–90 (4th Cir. 2000). Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court . . . carry a strong presumption of verity . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.*

**First**, Taylor cannot plausibly claim to have been uninformed of the consequences of pleading guilty or proceeding to trial. From the beginning, Taylor was fully informed of the charges against him and the maximum penalties he faced for those charges at his Rule 5 initial appearance. *See* Fed R. Crim. P. 5(d)(1). At Taylor's Rule 11 proceeding, the Court ensured that Taylor's plea was knowing and voluntary, that Taylor was competent to tender a guilty plea, and that Taylor understood the consequences of pleading guilty as opposed to going to trial. Accordingly, contrary to his claim, the transcript of his change-of-plea hearing conclusively shows that Taylor understood the nature of the charge to which he pled guilty and the consequences of pleading guilty to it. During the hearing, the Court advised Taylor of all the material consequences of pleading guilty, including waiving his right to a jury trial, waiving his right not to incriminate himself, waiving the right to challenge incriminating statements he made during the investigation, and waiving any defenses to the charges. (*See* Taylor Rule 11 Hearing Tr., attached as Exhibit 1, at 11-13.) Taylor advised the Court that understood the rights that he was relinquishing by pleading

guilty. (Ex. 1 at 11-13.) And, when the Court asked Taylor if he still wished to plead guilty after discussing all of the rights he was giving up by pleading guilty, Taylor indicated he did. (Ex. 1 at 15.) Taylor's sworn statements at his Rule 11 proceeding are binding on him. *See, e.g.*, *Blackledge*, 431 U.S. at 74 & n.4; *United States v. Moussaoui*, 591 F.3d 263, 299-300 (4th Cir. 2010); *Lemaster*, 403 F.3d at 221-23. Moreover, Taylor's sworn statements at his Rule 11 proceeding defeat his claim both as to performance and prejudice. *See, e.g., Hill*, 474 U.S. at 57-59; *Strickland*, 466 U.S. at 687, 691-96.

**Second**, Taylor attacks his counsel's performance for failing to file a motion to suppress. In his motion, he suggests that he believed that a state search warrant was not supported by probable cause but that his counsel neglected to file a suppression motion. (ECF No. 100, at 13.) Like his first claim, this argument is belied by the record and Taylor's sworn statements during his Rule 11 hearing. The Court asked Taylor whether his attorney failed to do anything that he had asked her to do, to which Taylor responded, "I'm fine." (Ex. 1 at 10.) The Court confirmed by asking Taylor if he was fully satisfied with his attorney's services, and Taylor answered "Yes, ma'am." (Ex. 1 at 10.) When the Court asked Taylor whether he had any complaint about his attorney that he wanted to bring to the Court's attention, Taylor stated "No, ma'am." (Ex. 1, at 10.) Here, Taylor's self-serving claim faulting his attorney for failing to file a motion to suppress is contrary to his statements made under oath and should be summarily rejected. *See Lemaster*, 403 F.3d at 221-222.

Furthermore, Taylor has failed to meet his burden in demonstrating that his attorney's failure to file a suppression motion was objectively unreasonable or that he was prejudiced by that decision. Notably, Taylor does not allege that he specially requested his attorney to file a motion to suppress the search warrant. Instead, he conclusorily states that he held a "belief that the search warrant was insufficient." (ECF No. 100, at 13.) He also fails to allege which of the multiple search warrants he believed to be defective. (*See* Taylor PSR ¶¶ 12,, 23-26.) In any event, as Taylor's attorney indicates in her sworn affidavit, she "reviewed all the discovery material with him, and he did not dispute any of the facts, nor wish to challenge the searches." (Evatt Aff.,

attached as Exhibit 2, ¶ 5.)  Instead, Taylor's counsel made the calculated and reasonable strategic decision to secure the most favorable plea agreement, which included a deal that allowed Taylor to plead to the lesser included offense of Count 1, dismissal of his state charges, and dismissal of the 18 U.S.C. § 924(c) count, which carried a five-year consecutive imprisonment term.  (Ex. 2, ¶ 5.)  The agreement Taylor's counsel brokered with the Government also included a stipulation by the Government that it would not defend the two-level enhancement recommended by Taylor's PSR, which resulted in a further reduction in Taylor's advisory sentencing guidelines range.  (Ex. 2, ¶ 4.)  Taylor has failed to meet his burden in demonstrating that his counsel's decision to allow him to accept the very favorable plea bargain rather than pursue a suppression motion was objectively unreasonable or that he suffered any prejudice from counsel's decision.

**Third**, Taylor complains that his attorney was constitutionally ineffective for failing to conduct an adequate pretrial investigation.  Here again, Taylor's claim is inconsistent with the statements he made under oath during his change-of-plea hearing during which he advised the Court that he was satisfied with the manner in which his counsel represented him, that he spoke with his attorney for as often and for as long that he felt necessary, that he was fully satisfied with his attorney's performance, and that he had no complaint about his attorney's representation.  (Ex. 1, at 9-11.)   As Taylor's attorney indicates in her sworn affidavit, she met with Taylor at the jail on seventeen occasions, reviewed discovery with him, and Taylor indicated he wanted to plead guilty.  (Ex. 2, ¶¶ 2, 5.)  Taylor's counsel therefore focused her efforts on securing the best possible plea deal for Taylor in light of decision to plead guilty and cooperate, which she accomplished by the Government's multiple concessions that had the effect of reducing his mandatory minimum from fifteen to five years' incarceration,[1] dismissal of the state charges, and a lower guidelines range.  (Ex. 2, ¶¶ 2, 3.)  Counsel's strategy can hardly be characterized as objectively unreasonable, particularly when faced with Taylor's post-*Miranda* admission to his role in the charged conspiracy.  Turning to the prejudice prong, Taylor is unable to show a "reasonable probability

---

[1] As charged, Taylor faced a 10-year mandatory minimum on Count 1, and a 5-year consecutive sentence for Count 2.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  He therefore has failed to meet his burden of affirmatively proving prejudice so serious as to have deprived them of a fair trial. *See id.* at 693. Rather, Taylor complains generally about the lack of an independent pretrial investigation with no allegation as to how the result of the proceeding would have been different had his defense attorney proceeded specifically with such an additional investigation. He fails to state what exculpatory evidence or discovery materials could have been, but were not, obtained through additional investigation or how these materials would have affected the outcome of his case.  For these reasons, judgment should be entered in favor of the Government.

**Fourth**, Taylor asserts that his counsel failed to review and explain his PSR to him and further faults his attorney for failing file objections to the PSR.  This claim is meritless.  At the beginning of Taylor's sentencing hearing, the Court asked Taylor whether he had enough time to go over his PSR with his attorney, whether his attorney answered all his questions about the PSR, and whether he understood the contents of the PSR.  (Taylor Sentencing Tr., attached as Exhibit 3, at 3.)  Taylor answered affirmatively to each of the Court's questions.  (Ex. 3, at 3.)  Taylor's argument that his counsel rendered ineffective assistance by failing to object to the stash house enhancement is factually meritless.  Taylor's counsel did object to the two-level stash house enhancement and negotiated with the Government a deal whereby the Government did not pursue the enhancement at Taylor's sentencing hearing.  (Ex. 3, at 3-4.)  Regarding Taylor's claim that his counsel was constitutionally ineffective for failing to object to the two-level firearm enhancement, Taylor's attorney stated that she met with Taylor three times to review his PSR, and he objected only to the stash house enhancement.  (Ex. 2, ¶ 6.)  In any event, Taylor is unable to show that failing to object to the firearm enhancement was objectively unreasonable.  The sentencing guidelines provide that "[i]f a dangerous weapon (including a firearm) was possessed," the sentencing court is to "increase by 2 levels" the offense level.  USSG § 2D1.1(b)(1).  The relevant Application Notes provide that the weapon enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  USSG §

2D1.1 cmt. n.  Here, the two-level firearm enhancement was assessed based, in part, on the execution of search warrants associated with Taylor's residences, which resulted in the seizure of large quantities of drugs and multiple firearms present in close proximity to the drugs.  (Taylor PSR ¶¶ 12, 24, 26.); *United States v. Harris*, 128 F.3d 850, 852 (4th Cir.1997) (observing "the proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under section 2D1.1(b)(1)").  Further, Taylor admitted to the possession of the firearms. (Taylor PSR ¶ 28.)  In light of the seizure of both large quantities of drugs and guns from residences associated with Taylor and his admission to the possession of firearms and role in the drug conspiracy, Taylor is unable to demonstrate that his counsel was ineffective for failing to object to the firearm enhancement recommended in the PSR.

**Fifth**, Taylor faults his counsel for failing to consult with him about filing a notice of appeal pursuant to *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).  Taylor's counsel stated in her sworn affidavit that "Taylor did not indicate that he wished to appeal following his hearing."  (Ex. 2, ¶ 7.)  In light of negotiations between counsel, Taylor's attorney observed, Taylor "knew going into sentencing that he was consenting to a sentence of 130 months, which he received, since he won the only objection had, was satisfied with the outcome."  (Ex. 2, ¶ 7.)  Taylor's bare assertion in his motion that his counsel was ineffective for failing to consult with him and file a notice of appeal is insufficient to state an ineffective assistance of counsel claim.  Indeed, Taylor's plea agreement contained a waiver of his right to file a direct appeal, and he failed to even allege in his § 2255 motion that he requested his attorney to do so.  *See Eason v. United States*, No. 5:08-CR-251-FL-3, 2015 WL 8481774, at *6 (E.D.N.C. Nov. 10, 2015) (concluding, without a hearing, that claim of ineffective assistance for failure to file a notice of appeal lacked merit where the petitioner contended his attorney did not file an appeal but did not allege that he ever instructed her to do so, and finding that "[a]bsent evidence that these allegations go beyond mere unsupported assertions, coupled with a waiver of appeal, the validity of which is unchallenged, and there being no allegation that [petitioner] requested that counsel file a notice of appeal on his behalf, this issue lacks merit and should be dismissed.") (citing *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir.

2013) (noting that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.")), adopted by 2015 WL 8483355 (E.D.N.C. Dec. 9, 2015).

Even assuming a failure to consult, there are no allegations from which the court could find a duty to consult in light of the *Roe* factors. *Roe*, 528 U.S. at 480. Taylor plead guilty, his plea agreement included a comprehensive appeal waiver, and he received a within guideline range sentence. *Id.* ("Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal."). Further, both parties agreed, based on negotiations, that Taylor's sentence should be 130 months, which is the term of imprisonment the Court imposed. (Ex. 3, at 6-9.) For these reasons, Taylor has failed to even allege facts demonstrating prejudice, and the Court should enter judgment in favor of the Government.

### Conclusion

For the reasons provided above, the Government respectfully moves the Court to enter judgment in favor of the Government on Taylor's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

COREY F. ELLIS
UNITED STATES ATTORNEY

By:     s/Benjamin N. Garner
        Benjamin N. Garner (Fed. ID # 11477)
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, SC 29201
        Email: Benjamin.Garner@usdoj.gov
        Tel:  803-929-3000
        Fax:  803-254-2889

June 8, 2022
Columbia, South Carolina

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:18-312-MGL |
| | ) | |
| v. | ) | |
| | ) | |
| COREY DESHAWN TAYLOR | ) | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an employee in the Office of the United States Attorney for the District of South Carolina, Columbia, South Carolina, and as attorney of record on June 9, 2022, I caused a legal assistant to serve a copy of a **GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** via the court's e-noticing system, but if that means failed, then by regular United States Mail, postage paid, on the following person:

> Corey Deshawn Taylor, Reg. # 33448-171
> FCI Coleman Low
> Federal Correctional Institution
> P.O. Box 1031
> Coleman, FL 33521

> By:    s/Benjamin N. Garner
> Benjamin N. Garner (Fed. ID # 11477)
> Assistant United States Attorney
> 1441 Main Street, Suite 500
> Columbia, SC 29201
> Benjamin.Garner@usdoj.gov
> Tel: (803) 929-3000
> Fax: (803) 254-2889